UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WSB WALNUT ASSOCIATES, LLC; JOSEPH BRADY; and CAROL WEST,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA; and the INTERNAL REVENUE SERVICE,

    Defendants.
_____/

No. C 04-0898 MHP

**MEMORANDUM & ORDER
Re: Plaintiffs' Motion for Summary Judgment**

On March 5, 2004 plaintiffs WSB Walnut Associates, LLC ("Walnut"), Joseph Brady and Carol West brought this action against defendants the United States of America and the Internal Revenue Service ("IRS") under 26 U.S.C. section 7426(a)(4), seeking to obtain a return of funds deposited with the IRS pursuant to 26 U.S.C. section 6325(b)(4). Now before the court is plaintiffs' motion for summary judgment.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiff Walnut is a California Limited Liability Company. Plaintiffs Joseph Brady and Carol West and counterclaim defendant Laura Sorenson are the principals of Walnut. On September 6, 2001 Brady, West and Sorenson executed an Operating Agreement pursuant to which Walnut was formed. See Joseph Brady Dec., Exh. A. Walnut was specifically formed in order to acquire certain

1 real property located at 852–860 Walnut Street, Redwood City, California ("subject property") from
2 Sorenson for investment purposes and to develop it as multi-family residential property. Id. at 1
3 § 1.2. When the parties entered into the Operating Agreement, Sorenson was the sole owner of the
4 subject property.

5 Under the terms of the Operating Agreement, Sorenson was to contribute the subject
6 property to Walnut as her initial capital contribution to the partnership. As provided in section 2.1
7 of the Operating Agreement, "[t]he parties have valued the Property at Nine Hundred Thousand
8 Dollars ($900,000) (the "Agreed Value"). . . . Sorenson shall contribute the [subject property] to the
9 Company, free and clear of all claims, judgments, monetary liens, exceptions and encumbrances
10 . . . as her Initial Capital Contribution." Id. at 2 § 2.1(a). The Operating Agreement further provided
11 that Sorenson "shall contribute the Property" to Walnut no sooner than thirty days after West or
12 Brady, on behalf of Walnut, delivered a "Vacation Notice" to Sorenson, instructing her to vacate the
13 property. Id.

14 On September 17, 2001 West, Brady and Sorenson executed and recorded a Memorandum of
15 Agreement ("MOA") that memorialized Sorenson's obligation to contribute the subject property to
16 Walnut in accordance with the terms of the Operating Agreement. See Brady Dec., Exh. B. The
17 MOA provided that "[t]his Memorandum is to provide notice of the existence of the Operating
18 Agreement and Sorenson's obligation to contribute the Property thereunder, and does not modify or
19 amend the terms thereof." Id. The MOA was recorded in the San Mateo County Recorder's Office.

20 Prior to the execution of the Operating Agreement and the MOA, a delegate of the Secretary
21 of the Treasury made an assessment[2]—coupled with a notice and demand—against Sorenson for
22 Trust Fund Recovery Penalties[3] in the amount of $139,794.42 pursuant to section 6672 of the
23 Internal Revenue Code ("IRC" or "tax code"). Request for Judicial Notice in Support of Plaintiffs'
24 Motion for Summary Judgment ("RJN"), Exh. B (hereinafter "Defs.' Counterclaim") ¶ 22. On
25 November 29, 2001 the Internal Revenue Service recorded a Notice of Federal Tax Lien against
26 Sorenson for her failure to pay the assessment in the San Mateo County Recorder's Office in the
27 amount of $139,794.42 (the "Tax Lien"). Brady Dec., Exh. F at 2.
28

2

Brady and West assert that they did not discover the Tax Lien against the subject property until Brady obtained a title report for the property in January 2002 so that Walnut could get financing for the development of the property. After discovering the federal tax lien, West, Brady and Sorenson ultimately decided to abandon the development project. Nonetheless, on May 9, 2002 West, on behalf of Walnut, sent a letter to Sorenson instructing her to vacate the subject property in accordance with the terms of the Operating Agreement and the MOA. Brady Dec., Exh. C. Pursuant to her obligations under the Operating Agreement and the MOA, Sorenson conveyed all of her interest in the subject property to Walnut by grant deed on June 4, 2002. Brady Dec., Exh. D. The grant deed was recorded in the San Mateo County Recorder's Office on July 3, 2002.

After Sorenson conveyed the subject property to Walnut, the parties, noting that Sorenson had defaulted on her obligations under the Operating Agreement[4], amended the Operating Agreement ("Amended Agreement"). The amendment was to take effect upon the sale of the subject property to a third party. In this Amended Agreement, Sorenson, West and Brady agreed to sell the subject property and dissolve Walnut. Brady Dec., Exh. E. They also amended section 3.5(b) of the original Operating Agreement, which set forth the distributive scheme for cash available for distribution to the partners of Walnut at the close of each fiscal quarter. Id. at 2 § 2.1. Under the amended section 3.5(b), Sorenson's interest in any cash available for distribution was effectively subordinated to the interests of West and Brady. See id. The Amended Agreement also provided that up to $133,166 of the Tax Lien would be paid prior to distributing any remaining cash among the partners under section 3.5(b). The Amended Agreement further provided that "Sorenson . . . acknowledges that her personal liability to the Internal Revenue Service for a tax lien will be paid at the closing of a sale of the Property through escrow." Id. at 3 § 2.5.

On March 23, 2003 Walnut applied to the IRS for a Certificate of Discharge of the subject property from the Notice of Federal Tax Lien that was recorded on November 29, 2001. Defs.' Counterclaim ¶ 31. The IRS denied Walnut's application. Id. Walnut subsequently entered into a contract with a third party to sell the subject property on March 31, 2003. Id. ¶ 34. On October 21, 2003 the IRS served upon Walnut a Notice of Levy, seizing "any interest of the taxpayer [Sorenson]

3

in WSB Walnut Assoc., LLC including proceeds fro [sic] the sale of property located at 850–852 Walnut RWC, CA." Id., Exh. A. Plaintiffs failed to honor the levy. However, on October 31, 2003 Walnut deposited the sum of $146,801.55—the amount of the assessment against Sorenson and interest thereon—with the IRS pursuant to section 6325(b)(4) of the Internal Revenue Code. Brady Dec., Exh. F. In accordance with section 6325(b)(4), the IRS then issued a certificate of discharge to Walnut. Id. See also 26 U.S.C. § 6325(b)(4).[5] Once plaintiffs received the certificate of discharge, the subject property was released from escrow and was conveyed to the third party with whom plaintiffs had entered into an agreement of sale. The purchase price of the subject property was $920,000. Brady Dec. ¶ 12. However, as the cash distribution structure was altered pursuant to the Amended Agreement, none of the sale proceeds reached Sorenson who, according to plaintiffs, has a current negative distribution of approximately $70,000. See Brady Dec., Exh. G.

Plaintiffs timely filed the present action for relief pursuant to section 7426(a)(4) of the IRC.[6] In their complaint, plaintiffs seek reimbursement of the sum they deposited with the IRS to obtain a certificate of discharge pursuant to section 6325(b)(4). Defendants subsequently filed a counterclaim against plaintiffs seeking a personal judgment against them for their failure to honor the IRS levy in the amount of $146,801.55. Sorenson, as a party in interest, has filed an opposition asserting that to grant plaintiffs' motion would visit an inequity on her.

On February 10, 2005 this court entered a stipulated judgment filed by counterclaim defendant Sorenson and the United States. Pursuant to this stipulated judgment, the United States shall have judgment in its favor as against Sorenson in the amount of $139,734.42 with respect to the Trust Fund Recovery Penalty assessed against her. The United States must first attempt to satisfy the judgment from the sum deposited with the IRS by Walnut.

LEGAL STANDARD

I. Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

In the instant matter, plaintiffs assert that they are entitled to a full refund of the funds now on deposit with the IRS because the federal tax levy is wrongful.  Plaintiffs argue that their interest in the subject real property had priority over the Tax Lien under the common-law principle of "first in time, first in right."  Plaintiffs contend that when they recorded the MOA on September 17, 2001, they immediately acquired an equitable interest in the subject property.  Consequently, plaintiffs argue that their interest has priority over the Tax Lien, which was not recorded until November 29, 2001.[7]  In response, defendants contend that the MOA did not give plaintiffs a perfected or choate interest in the subject property.  Rather, defendants argue that plaintiffs did not acquire an interest in the subject property until Sorenson conveyed the property to Walnut by grant deed on June 4, 2002.

5

According to defendants, the Tax Lien has priority over plaintiffs' interest in the property, and, as a result, the levy is not wrongful.

I. Enforceability of Tax Lien

    **A.    Effect of the Assessment Made Against Sorenson on May 21, 2001**

        (1)    The Taxpayer's Interest in the Subject Property on the Date of the Assessment

Here, the Tax Lien arose pursuant to section 6321 of the Internal Revenue Code, 26 U.S.C. section 6321.[8] See In re Kimura, 969 F.2d 806, 809 (9th Cir. 1991) (finding that when the IRS assesses civil penalties for taxes owed pursuant to section 6672 of the IRC, a federal tax lien attaches to the all of the taxpayer's property pursuant to section 6321 of the IRC); see also United States v. Alkire, 1993 U.S. Dist. LEXIS 7994, at *3 (C.D. Cal. May 25, 1993). The parties do not genuinely dispute that Sorenson—the taxpayer—held full legal and equitable title to the subject real property on May 21, 2001, the date of the assessment. Consequently, Sorenson held a property interest to which the Tax Lien could properly attach. Aquilino v. United States, 363 U.S. 509, 512 (1960). Contrary to plaintiffs' argument, it is irrelevant that Sorenson currently has a negative interest in Walnut's cash distribution, as the Tax Lien attached when Sorenson held full legal and equitable title to the subject property.

        (2)    Date on Which the Federal Tax Lien Attached to the Subject Property

The parties are under the mistaken impression that the Tax Lien did not attach to the subject property until November 29, 2001, the date on which the IRS recorded notice of the lien. Contrary to the parties' understanding, when the IRS made the assessment against Sorenson on May 21, 2001 pursuant to section 6672 of the IRC, the Tax Lien attached to all of Sorenson's property, including the subject real property. See 26 U.S.C. §§ 6321, 6322. See also United States v. McDermott, 507 U.S. 447, 448 (1993); TKB Int'l Inc. v. United States, 995 F.2d 1460, 1463 (9th Cir. 1993) (citation omitted); Miller v. United States, 763 F. Supp. 1534, 1539 n.8 (N.D. Cal. 1991) (Patel, J.) (noting that "[n]umerous cases stand directly for the proposition that a federal tax lien arises when the IRS

6

1  makes an assessment coupled with a demand for payment." (citations omitted)).  Although the IRS

2  did not record the Tax Lien until November 19, 2001, the lien was valid as against Sorenson—the

3  taxpayer—as of May 21, 2001.  TKB Int'l Inc., 995 F.2d at 1463 (noting that the IRS does not have

4  to file notice of a federal tax lien in order for the lien to be valid as against the taxpayer).  However,

5  as discussed more fully below, if the IRS does not record a notice of a federal tax lien, this may

6  affect the priority of the tax lien vis-a-vis certain third party interests in the property.  Id.

II. Priority of Tax Lien

    **A.    First in Time**

Plaintiffs contend that under the federal common-law principle that "the first in time is the first in right," they held a valid and perfected interest in the property as of September 17, 2001 by virtue of the recording of the MOA.  Even assuming, *arguendo*, that plaintiffs' contention is correct, under the first in time principle, the Tax Lien—which attached on May 21, 2001—had priority over any interest plaintiffs may have had in the subject property as of September 17, 2001.  See McDermott, 507 U.S. at 449.  Consequently, the interest—if any—that plaintiffs took in the property was subject to the federal tax lien.

Plaintiffs' reliance on Claremont Terrace Homeowners' Assoc. v. United States, 146 Cal. App. 3d 398 (1983), for the proposition that their interest in the subject property is superior to defendants' interest under the common-law principle of "first in time first is right" is unavailing.  Claremont Terrace involved a priority contest between a homeowners' association and the federal government.  On December 1, 1974 the homeowners' association entered into an option contract with the taxpayer to purchase a parcel of property.  Id. at 402.  The parties never recorded the option. Id. at 404.  On May 5, 1975 the IRS assessed a penalty against the taxpayer for unpaid federal employment taxes.  Id. at 402–03.  The IRS recorded a notice of the federal tax lien on July 11, 1975.  On December 15, 1975 the homeowners' association orally exercised its option to purchase the property.  Id. at 403–04.

7

In determining the relative priority of the federal tax lien vis-a-vis the association's interest in the property, the Claremont Terrace court first noted that the IRS made an assessment against the taxpayer and recorded its lien *before* the association exercised its unrecorded option. Consequently, the court determined that the government's

> lien must be given priority as first in time *unless* the grant of the option to purchase [which was effectuated before the IRS made the assessment] *ipso facto* divested [the taxpayer] of his interest in the property, so that, in effect, at the time the Internal Revenue Service lien arose, the taxpayer had no property interest to which it could attach.

Id. at 405 (emphasis added). In finding that the association's interest had priority over the federal tax lien, the court relied on the doctrine of "relation back." Under California law, when an optionee exercises an option, his interest in the property "relates back" to the date on which the option was granted. Id. at 406 (citations omitted). The effect of this legal fiction is that when an option is exercised, it extinguishes all intervening interests such as liens that attached to the property after the option was granted but before it was exercised. Id. at 406–07. In Claremont Terrace, the court thus found that upon exercising the option, the association's interest in the property related back to December 1, 1974—the date on which the option was granted. Consequently, under the "relation back" doctrine, the federal tax lien, which did not attach until May 5, 1975 when the IRS made the assessment against the taxpayer, was extinguished by the earlier grant of the option. Id. at 407.

Plaintiffs' reliance on Claremont Terrace evidences a misapprehension of not only the facts of that case but of the relevant law. First, it is unclear if the doctrine of "relation back" applies to disputes concerning the relative priority of a federal tax lien. See Rodriguez v. Escambron Dev. Corp., 740 F.2d 92, 98 (1st Cir. 1984). Second, even assuming, *arguendo*, that plaintiffs could invoke the "relation back" doctrine, their interest in the property would only have "related back" to September 17, 2001, the date on which the MOA was executed and recorded. Accordingly, the doctrine of "relation back," would be of no help to plaintiffs, as the MOA was entered into after the Tax Lien had already attached to the property.

8

### B.     Validity of Tax Lien as Against Plaintiffs

Section 6323 of the IRC governs the priority of interest between a federal tax lien arising under section 6321 and certain third-party claims to the property to which the federal tax lien has attached.  Section 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection(f) has been filed by the Secretary." Because it is clear that plaintiffs cannot qualify as holders of a security interest, mechanic's lienors, or judgment lien creditors, the court trains on the question of whether plaintiffs might qualify as purchasers under section 6323(a).  If plaintiffs are found to be purchasers, the Tax Lien would be displaced by virtue of the fact that plaintiffs recorded their putative interest in the property before the IRS recorded its federal tax lien.  In addressing the question of whether plaintiffs qualify as "purchasers" under section 6323(a), "[f]ederal law alone is decisive."  Berg v. United States, 121 F.3d 535, 537 (9th Cir. 1997) (holding that a "good faith purchaser" under state law is not necessarily a purchaser for "full and adequate consideration" under section 6323(a) of the IRC (citing In re Walter, 45 F.3d 1023, 1030 (6th Cir. 1995)).

In the present action, plaintiffs fail to meet any of the definitions of purchaser under section 6323(a).  For purposes of section 6323(a), a "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice."  Under section 6323(h)(6), the following interests are deemed "property interests" for purposes of applying section 6323(a): (1) a lease of property; (2) a written executory contract to purchase or lease property; (3) an option to purchase or lease property or any interest therein; and (4) an option to extend or renew a lease of property.  26 U.S.C. § 6323(h)(6).  As subsections (1) and (4) are inapplicable, to qualify as purchasers, plaintiffs must meet the requirements of subsection (3) or (4).  In other words, the MOA—which was recorded on September 17, 2001—would have to qualify as an option or an executory contract to purchase property in order for plaintiffs' putative interest in

1 the property to be protected from the operation of the federal tax lien under section 6323(a) of the
2 IRC.

3 　　　　In their opening brief, plaintiffs cite to section 6323(a) of the IRC and quote the language of
4 that section verbatim.[9]  However, because plaintiffs cling to the mistaken notion that their putative
5 interest in the subject property was created before the Tax Lien arose, they fail to address the
6 question of whether they qualify as "purchasers" under the IRC.

7 　　　　At oral argument, plaintiffs conceded that they did not hold an option to purchase the subject
8 property.  The court agrees, as plaintiffs have offered no evidence that they provided additional
9 consideration—besides what was needed to form the Operating Agreement—for their option.  To be
10 valid under California law, an option requires evidence of its own consideration separate from the
11 underlying contract.  Torlai v. Lee, 270 Cal. App. 2d 854, 858 (1969).  An option without separate
12 consideration is simply "a continuing offer which may be revoked at any time."  Id. at 859.

13 　　　　Given that they did not have an option, plaintiffs would have to show that the Operating
14 Agreement and the MOA constituted a written executory contract to purchase the property—a
15 proposition which this court finds doubtful.  However, even assuming, *arguendo*, that plaintiffs had
16 entered into an executory contract to purchase the property, the court finds that plaintiffs were not
17 "purchasers" within the meaning of section 6323(a) because they did not acquire their interest for
18 "adequate and full consideration in money or money's worth . . . ."  26 U.S.C. § 6323(h)(6).  Under
19 section 301.6323(h)-1 of the Treasury Regulations,

20　　　the term 'adequate and full consideration in money or money's worth means a
　　　consideration in money or money's worth *having a reasonable relationship to the*
21　　　*true value of the interest in property acquired. . . .*  Adequate and full consideration in
　　　money or money's worth may include the consideration in a bona fide bargain
22　　　purchase.  The term also includes the consideration in a transaction in which the
　　　purchaser has not completed performance of his obligation, such as the consideration
23　　　in an installment purchase contract, even though the purchaser has not completed the
　　　installment payments.
24
26 C.F.R. § 301.6323(h)-1(f)(3) (emphasis added).
25
　　　　Although the courts in this Circuit have not considered the issue of what constitutes
26
"adequate and full consideration in money or money's worth" for purposes of sections 6323(a) and
27
28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

6323(h)(6) of the IRC, courts in other circuits have consistently "required that the consideration and property value in this equation [under 26 C.F.R. section 301.6323(h)-1(f)(3)] be relatively close." United States v. McCombs, 928 F. Supp. 261, 268 (W.D.N.Y. 1995) (finding that putative "purchasers" did not give full and adequate consideration for real property despite the fact that the consideration given amounted to 67% of the property's value) (citations omitted)). See also United States v. MAC Cement Finishing Corp., 546 F. Supp. 52, 53–54 (N.D.N.Y. 1982) (holding that where a party paid $7,857.01 for property that had a fair market value of $17,000, the party did not give "full and adequate consideration" for purposes of section 6323(h)(6) of the IRC); District Divine Sci. Church v. United States, Civil No. F 79-100, 1979 WL 1523, at *3 (N.D. Ind. Dec. 4, 1979) (finding that a purchaser that gave $42,794.19 in consideration for property with a fair market value of at least $59,000 did not give "adequate and full consideration in money or money's worth within the meaning of 26 U.S.C. § 6323.").

In the instant matter, it is difficult to ascertain from the Operating Agreement what the consideration to Sorenson was contemplated to be. Nonetheless, plaintiffs maintain that Sorenson received valuable consideration for entering into the Operating Agreement and MOA. In return for her promise to convey the property to Walnut, Sorenson received consideration in the form of a 25% interest in the Company. Plaintiffs also submit that Sorenson received a $100,000 loan from West as additional consideration for entering into the agreement to convey the subject property to Walnut. Id. at 4; see also Brady Dec., Exh. A at 34. When West, Brady and Sorenson entered into the Operating Agreement, the parties agreed that the subject property had a fair market value of $900,000. Brady Dec., Exh. A at 34.

The court finds that the 25% interest in Walnut, a partnership whose assets consisted almost entirely of the subject property, and the $100,000 loan which were given to Sorenson as consideration for an interest in the property, which had an agreed upon value of $900,000, do not amount to "full and adequate consideration in money or money's worth" under section 6323(h)(6) of the IRC. Therefore, even if plaintiffs could show that they had entered into an executory contract for the purchase of the property, plaintiffs' interest would not have priority over the Tax Lien.

11

III.  Enforceability of the IRS's Levy

Plaintiffs further argue that they are entitled to the immediate return of the full amount of the funds they deposited with the IRS to obtain the certificate of discharge because under the Amended Agreement, Sorenson's net distribution from the sale of the subject property is negative $70,710.80. Essentially, plaintiffs contend that because Sorenson did not have a property interest in the sale proceeds, there is no interest upon which the IRS can levy. Plaintiffs' argument misunderstands the IRS lien and levy processes because when the IRS levied on the federal tax lien on October 21, 2003, the tax lien was still attached to the subject real property. It is immaterial that Sorenson no longer had any interest in the property because a federal tax lien, once created, "continues to attach to a taxpayer's property regardless of any subsequent transfer of the property." United States v. Donahue Indus., Inc., 905 F.2d 1325, 1330 (9th Cir. 1990). Under section 6331(a) of the IRC, the IRS has the authority to collect delinquent taxes by levying upon all property and rights to property belonging to the taxpayer or on "which there is a lien . . . for the payment of such tax." 26 U.S.C. § 6331(a). It is well established that the IRS may levy on property even if the taxpayer no longer maintains any rights in such property at the time of the levy, provided that the federal tax lien remains. See Donahue Indus., 905 F.2d at 1331 (holding that "property subject to a federal tax lien need not be in the hands of the taxpayer at the time a levy is made."). Here, when the IRS levied upon its lien, Walnut was in possession of the subject property to which the Tax Lien was attached. The fact that Sorenson no longer had an interest in the subject property did not affect the ability of the IRS to levy upon its lien. Accordingly, Walnut was required to surrender the property as demanded by the IRS.

IV.  Defendants' Motion for Summary Judgment

In their opposition papers, defendants move for summary judgment on the ground that in an action to enforce an IRS levy pursuant to section 6332(d)(1) of the IRC, such as the counterclaim here, a person served with a tax levy only has two defenses for failure to honor the levy: (1) that the

12

1  person is not in possession of property belonging to the taxpayer, or (2) that the taxpayer's property
2  is subject to prior judicial attachment or execution.
3        Defendants' motion for summary judgment is untimely and improper, and the court declines
4  to consider it.[10]  The parties shall notify the court within ten (10)days of this order with respect to
5  proceeding on the defendants' motion.

7  V.    Conclusion
8        Based on the foregoing, the court finds that the Tax Lien attached to the subject property on
9  May 21, 2001 when the IRS made an assessment against Sorenson pursuant to section 6672 of the
10 IRC.  Given that plaintiffs do not qualify as "purchasers" under section 6323(a) of the IRC, the
11 putative interest that they received in the subject property by virtue of recording the MOA cannot
12 prime the Tax Lien, which was recorded on November 29, 2001.  When Sorenson conveyed the
13 subject property to Walnut on June 4, 2002, Walnut took the property subject to the Tax Lien
14 notwithstanding the fact that Sorenson's rights to the property had been extinguished.  As a
15 consequence, the IRS's levy—which was filed against Walnut on October 21, 2003—was not
16 wrongful.  The court finds that as a matter of law, plaintiffs are *not* entitled to a refund of the sum
17 they deposited with the IRS on October 31, 2003 to discharge the federal tax lien.  Plaintiffs' motion
18 for summary judgment is therefore DENIED.
19       In view of the court's decision on plaintiffs' motion for summary judgment, the parties shall
20 file and serve a statement within ten (10) days of the date of this order as to whether it is necessary
21 to proceed on defendants' motion for summary judgment.  If so, the court will set a briefing schedule
22 for the motion.  If not, defendants shall file and serve within twenty (20) days of the date of this
23 order a form of order for the completion of this case.

25       IT IS SO ORDERED.
26 Dated: May 16, 2006

                                      MARILYN HALL PATEL
                                      District Judge
                                      United States District Court
                                      Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

**ENDNOTES**

1. The following facts were culled from the complaint unless otherwise noted.

2. For purposes of the Internal Revenue Code, "the term 'assessment' involves a 'recording' of the amount the taxpayer owes the Government." Hibbs v. Winn, 542 U.S. 88, 100 (2004) (citations omitted). Pursuant to section 6201(a) of the IRC, the Secretary of the Treasury is authorized "to make . . . assessments of all taxes . . . imposed by this title." 26 U.S.C. § 6201(a). "An assessment is made 'by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.'" Hibbs, 542 U.S. at 100 (citation omitted).

3. Pursuant to 26 U.S.C. sections 3102(a), 3402(a), and 7501(a), "employers are required to withhold federal social security and income taxes from their employees' wages and hold these taxes in trust for the government." Dallin v. United States, 62 Fed. Cl. 589, 591 (Fed. Cl. 2004). If an employer does not pay such trust fund taxes to the government when due, "officers, and specified employees, of such employers can be held personally liable for the trust fund taxes . . ." pursuant to 26 U.S.C. section 6672. Id. If an employee incurs trust fund recovery penalties, they "are to be 'assessed and collected in the same manner as taxes.'" Id. (quoting 26 U.S.C. section 6671).

4. Presumably, Sorenson's alleged default was due to the fact that when she conveyed the subject property to Walnut on June 4, 2002, the title to the property was not "free and clear" of all liens.

5. It is worth noting that despite the fact that the IRS was seeking to enforce its levy against plaintiffs, it had "no discretion to refuse to issue" the certificate of discharge, for which Walnut properly applied. Coutant v. United States, No. 00–14163-CV-MOORE/LYNCH, 2002 U.S. Dist. LEXIS 7114, at *9 (D. Fla. 2002); accord City of Richmond v. United States, 348 F. Supp. 2d 807, 812–13 (D. Ky. 2004).

6. Under section 7426(a)(4),

> [i]f a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary.

7. Plaintiffs also argue that defendants have committed multiple discovery violations. However, plaintiffs have not demonstrated that they have suffered any prejudice as a result of these alleged violations. Consequently, this court will not consider the issue further.

8. Section 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.

9.  In contrast, defendants argue that "[t]he only subsection of Section 6323(b) that could apply to this case is section 6323(b)(6) which entitles the lien holder to priority over the federal tax lien if the lien is entitled to priority under local law." Defendants' citation to this section of the Internal Revenue Code is perplexing. By its terms, section 6323(b)(6) of the IRC only applies to liens on real property that secure the payment of (1) a tax of general application levied by a taxing authority, (2) a special assessment imposed on real property by a taxing authority, or (3) charges for utilities or public services furnished to the property by the United States. In the instant matter, it is clear that plaintiffs never had nor claimed to have had a lien on the property securing the payment of any of the claims enumerated in section 6323(b)(6). A "lien" is "[a] legal right or interest that a creditor had in another's property, lasting usually until a debt or duty that it secures is satisfied." Black's Law Dictionary 745 (7th ed. 2000).

10.  Based on the original March 20, 2006 hearing date, this court ordered that the last day for the parties to bring a motion for summary judgment was February 10, 2006. By stipulation, the parties subsequently agreed to give defendants until March 10, 2006 to respond to plaintiffs' motion for summary judgment. This court ordered that the motion hearing date that was originally scheduled for March 20, 2006 be continued to April 3, 2006. However, the court did not thereby extend the time in which to bring a motion for summary judgment.